UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| v. | ) | **No. 07 CR 50058-02** |
| | ) | |
| **MICHAEL JACKSON**, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MICHAEL JACKSON'S SENTENCING MEMORANDUM**

**NOW COMES** Michael Jackson, by his court-appointed counsel of record, Michael J.Phillips, and hereby submits the following Sentencing Memorandum in this matter.

**BACKGROUND**

Michael Jackson, the Defendant herein, was charged by Indictment in November of 2007 with one count of Conspiracy in violation of 18 U.S.C. § 1951(a) [Count I of the Indictment], four counts of Robbery Affecting Interstate Commerce in violation of 18 U.S.C. § 1951(a) [Counts II, VI, XII and XIV of the Indictment], and three counts of Use and Carrying A Firearm During A Crime Of Violence in violation of 18 U.S.C. § 924(c)(1)(A) [Counts III, XIII and XV of the Indictment]. On May 15, 2008, pursuant to a written Plea Agreement with the Government, Mr. Jackson entered a Plea of Guilty to Counts XII, XIII and XIV of the Indictment and stipulated to the allegations of Counts II and VI of the Indictment.

The Presentence Investigation Report and the letters from Mr. Jackson's family previously submitted to this Honorable Court (copies of which are attached as Exhibits A and B to this Sentencing Memorandum) set forth in detail the deprivations and challenges he faced during his youth, including his lck of a strong, positive male role model, his involvement with

the wrong type of "friends," He became a father at a young age and now has family responsibilities to support his very young daughter.

## SENTENCING PROCEDURE

In *United States v. Booker*, 543 US 220, 125 S Ct .738 (2005), the United States Supreme Court held that the United States Sentencing Guidelines ("USSG") were not mandatory, but merely advisory. *Booker* further required the sentencing court to consider all of the factors found at 18 U.S.C. 3553(a) to determine an appropriate sentence. In *Rita v. United States*, 551 U.S.____, 127 S. Ct. 2456 (2007), the Court held that when a sentencing judge's discretionary decision in a particular case accords with the United States Sentencing Commission, a court of appeals may presume the sentence is reasonable. Significantly, the Supreme Court noted that the sentencing court itself may NOT utilize the presumption that a sentence imposed within the sentencing ranges under the USSG is reasonable. This presumption of reasonableness applies only to a Court of Appeals when reviewing as sentenced already imposed by the District Court.

> We repeat that the presumption before us is an appellate court presumption. Given our explanation in Booker that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review.

551 U.S. at ___, 127 S.Ct. at 2465.

In *Gall v. United States,* ___U.S.___, 128 S.Ct. 586, 169 L.Ed.2d 445, 76 USLW 4009 (decided December 10, 2007), the Court held: "A sentence whether inside, just outside, or significantly outside the Guidelines range" is to be reviewed under a "deferential abuse of discretion standard." (Slip Opinion 2). There is no presumption that a sentence outside of the

USSG calculated sentencing range is unreasonable. "Although a sentence outside the range does not enjoy the presumption of reasonableness that one within the range does, it does not warrant a presumption of unreasonableness." *United States v. Howard*, 454 F.3d 700,703 (7th Cir. 2006), [*quoted with approval* in *Gall*, ___ U.S. ____, 128 S.Ct at 595, n. 3].

The result of the cited cases is that the sentencing court must engage in a two-step analysis. The first step being a correct calculation of the applicable Sentencing Guidelines. The second step being a consideration of the factors of Title 18 of the United States Code, Section 3553(a). In analyzing the sentence, the district court may not presume that a sentence within the Guideline range is reasonable. See, *Rita v. United States*, *supra*, and *Gall v. United States, supra*.

In short, assuming a proper two-step analysis, the sentencing court is armed with complete and unfettered discretion in determining the appropriate sentence to fulfill the objectives of Title 18 of the United States Code, Section 3553(a).

## SENTENCING GUIDELINES

Title 18 of the United States Code, §3553's Sentencing Factors Subsection (a) of this statute requires that this Honorable Court consider a number of factors prior to imposing a sentence, including the mandatory limitation that "The court (sic) shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection." The seven factors which this Honorable Court must consider before imposing sentence are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

**Sentencing Factor #1: The nature and circumstances of the offense and the history and characteristics of the defendant.**

This Honorable Court must initially consider the nature and the circumstances of the offense and the history and characteristics of Mr. Jackson. The offenses to which Mr. Jackson

plead guilty carry the following statutory penalties:

(1) Four Counts XII and XIV, no minimum prison sentence but a maximum penalty of twenty (20) years which can be served concurrently with each other; and

(2) For Count XIII, a minimum prison sentence of seven (7) years which must be served consecutively to the penalty imposed on Counts XII and XIV. The maximum term of imprisonment on Count XIII is Life Without Possibility Of Parole. Under the statute, Mr. Jackson is eligible for probation as the sentence for Counts XII and XIV, but not on Count XII. Thus, this Court may consider any prison sentence beginning with Seven (7) years on Count XIII and Probation on the other two Counts.

Because the USSG is not binding upon this Honorable Court, Mr. Jackson is still eligible for a sentence of as little as Seven (20) years [or 140 months] in federal prison. This Honorable Court thus must consider a sentence of Seven (7) years in custody of the USBOP, although Mr. Jackson urges this Honorable Court to adopt this as a reasonable sentence "sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection". 18 U.S.C. § 3553(a). Mr. Jackson does recognize that this Honorable Court may consider that length of incarceration as an inappropriate sentence for Mr. Jackson, but reminds this Honorable Court that Mr. Jackson is now twenty-two (22) years of age and the Government's recommended Twenty (20) year prison sentence will result in Mr. Jackson being gone during the entire childhood of his only child, who is now but a few weeks old. Upon his release from custody to care for his only child, he would thus be an unlikely threat to the safety of the community at that middle age.

Mr. Jackson's only felony offense, prior to the incident case, arose from an March 2006

arrest. His conviction from that arrest resulted in a sentence of PROBATION with no jail time. Other than that offense, which involved no use or threat of use of force against any person, Mr. Jackson's prior criminal involvement has been really limited to traffic offenses with one minor misdemeanor when he was not represented by counsel but did complete the period of conditionally discharge successfully including performing thirty (3) community service hours.

> **Sentencing Factor #2: The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational <u>or vocational training, medical care</u>.**

The recommended seven (7) year prison sentence on Count XIII in federal custody adequately reflects the seriousness of the offenses for which Mr. Jackson now stands convicted, is a just punishment and should provide adequate deterrence to other persons. No reasonable individual is likely to consider seven (7) years in federal prison as a "slap on the wrist".

Any rational person would seriously consider such a prison term before committing similar criminal conduct. The public will also be protected form further crimes by Mr. Jackson, at least for the next seven (7) years and upon release, Mr. Jackson will be a family man unlikely to continue to offend. Such a prison term is more than adequate to allow Mr. Jackson to undergo and to complete alcohol and drug treatment, as well as more than sufficient for Mr. Jackson to obtain an education or to learn a vocational trade prior to his return to society.

<u>**Sentencing Factor #3: The kinds of sentences available .**</u>

As noted in the Pre-Sentence Investigation Report, only Count XIII requires a prison sentence in this case and a period of probation is available a a sentence for Counts XII and XIV.

As shown by his prior experience with the State court system, Mr. Jackson can do well on a period of court monitoring. His only problems in the past are related to a lack of funds (since he was young and had trouble finding employment) to pay the court-ordered fines. The Court should thus consider a period of probation combined with the prison sentence on Count XIII.

### Sentencing Factors #4 & #5: As to United States Sentencing Guidelines

These Sentencing Factors have been discussed *ad nauseum* in the Pre-Sentence Investigation Report and no further comment is needed here.

### Sentencing Factors #6: The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Please see the attached comparison charts among Mr. Jackson and his co-defendants, which are marked as Exhibits, attached hereto and incorporated by reference as if fully set forth herein.

### Sentencing Factor #7: The need to provide restitution to any victims of the offense.

As noted in the Pre-Sentence Investigation Report, Mr. Jackson has no current funds and very little likelihood of earning any funds to pay restitution, especially if he is incarcerated for a long period in a federal prison. The only realistic opportunity for the payment of restitution arises from Mr. Jackson being out of prison, whether on probation or shortly after release from prison, and earning a living to support his child and to pay any court-ordered restitution. Thus, no further discussion of Sentencing Factor #7 is warranted.

### Factors Justifying a Statutory Sentencing Lower Than the Guidelines Range

As noted in the Pre-Sentence Investigation Report, the applicable sentencing range under

the United States Sentencing Guidelines is between Two Hundred Nineteen (219) Months and Two Hundred and Fifty-Two (252) Months. (PSI, Page 37, Line 959). The above discussion, including the family letters attached hereto (which is hereby incorporated by reference as if fully set forth herein), is replete with sufficient reasons to take the sentencing of Mr. Jackson "outside the heartland" of the usual Hobbs Act case.

That because of unique circumstances arising from Mr. Jackson' youth and current family situation, he would be eligible for a downward departure under USSG §5K2.0(a)(1) because there exists an aggravating or mitigating circumstance(s) of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described in the Guidelines. That because of the above unique circumstances, he would be eligible for a downward departure under USSG §5K2.0(a)(2) because Mr. Jackson' matter is an exceptional case in which there is present a circumstance(s) that the Sentencing Commission has not identified in the Guidelines but that nevertheless is relevant to determining the appropriate sentence.

## LEGAL ARGUMENT FOR STATUTORY SENTENCE LESS THAN THE GUIDELINES RANGE

**I. Request For Statutory Sentence Lower Than Guidelines Range Under 18 U.S.C. §3553(a)(1) for the nature and circumstances of the offense and the history and characteristics of the defendant.**

Initially, it should be noted that Mr. Jackson would qualify for a downward departure under both § 4A1.3 and §5K2.0 of the USSG for the reasons discussed *infra*. As being qualified for downward departures should be sufficient reasons to qualify for a statutory sentencing

variance considering the factors enunciated in Title 18 of the United States Code, §3553(a).

### A. Departures Generally

A departure in this case would be consistent with the goals of federal sentencing [now known as the imposition of a statutory sentence less than the Guidelines Sentencing range] - which are to deter crime, incapacitate the offender, provide just punishment, and rehabilitate the offender. See USSG, Chapter One, Part A, §2. Additionally, §5K2.0 provides that a sentencing Court may impose a sentence outside the range established by the applicable guidelines if the Court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately considered by the Sentencing Commission in formulating the Guidelines." In the policy statement, the Commission acknowledges that all circumstances cannot be comprehensively listed. In considering whether a departure is appropriate, this Court must also consider the language of Title 18 of the United States Code, § 3553(a), which requires that the Court "impose a sentence sufficient, but not greater than necessary to comply with the purpose set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

Recently, the Seventh Circuit has explained that the concept of "downward departures" are now obsolete, since *United States v. Booker* made the United States Sentencing Guidelines merely advisory and not binding upon this Honorable Court. As Judge Posner explained:

> The proper procedure under *Booker*, as we have explained in a number of cases, is for the sentencing judge first to compute the guidelines range and then to apply the sentencing factors in 18 U.S.C. § 3553(a) in order to decide whether the sentence should be inside or outside the range. E.g., *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir. 2006); *United States v. Cunningham*, 429 F.3d 673, 675 (7th Cir. 2005). . . . In short, "after *Booker*, which rendered the Guidelines advisory, departures have become obsolete." *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006).

*United States v. Spano*, 476 F.3d 476, 480 (7th Cir. 2007).

Further, the Seventh Circuit also noted that,

> The judge is not required-or indeed permitted, *United States v. Brown*, 450 F.3d 76, 81-82 (1st Cir.2006)- to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). *See, e.g., United States v. Miller*, 450 F.3d 270, 275 (7th Cir.2006). His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. *United States v. Walker*, 447 F.3d 999, 1008 (7th Cir.2006); *United States v. Baker*, 445 F.3d 987, 991 (7th Cir.2006); *United States v. Morales*, 445 F.3d 1081, 1086 (8th Cir.2006). The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

*United States v. Demaree*, 459 F.3d 791, 794 -795 (7th Cir. 2006).

Clearly, in acknowledging the "difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision," the Commission did not intend to prohibit a sentencing Court from considering any pertinent, relevant characteristics of a particular defendant. 18 U.S.C. § 3553(a). As sentencing procedures must take into account individual circumstances of each defendant, whether particular facts warrant departure in a case is a question left to the discretion of the sentencing court. See *United States v. Koon*, 518 U.S. 81, 94 (1996) (pointing out that departures from the applicable guidelines are permitted when circumstances exist that are not of a kind or degree adequately considered by the Sentencing Commission.)

### B. A Downward Departure Under § 4A1.3 Is Warranted Because Mr. Jackson's Criminal History Category of III Substantially Over-Represents The Seriousness of His Criminal Past And of The Likelihood That He Will Commit <u>Further Criminal Offenses Upon Release From Federal Custody</u>.

Mr. Jackson qualifies for a downward departure under § 4A1.3(b) of the USSG for overstatement of his Criminal History. This Guideline provides, in pertinent part, as follows:

(1) DOWNWARD DEPARTURES

(a) STANDARD FOR DOWNWARD DEPARTURE – If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of defendant's criminal history, or the likelihood that the defendant will commit other crimes, a downward departure may be warranted. As Application Note 3 to this Sentencing Guideline explains, in pertinent part:

> "This policy statement recognizes that the criminal history score is unlikely to take in to account all the variations in the seriousness of criminal history that may occur."

### C. Should this Court Find Any Factor Discussed above Insufficient by Itself to Warrant a Downward Departure, the Unique Combination of Factors Places Mr. Jackson' Case Outside the Heartland of the Guidelines.

Even if this Honorable Court decides that a downward departure on any of the grounds suggested alone is unwarranted, a departure can still be justified in this case by the unique combination of circumstances presented. As noted above, Mr. Jackson has suffered a deprived childhood that has warped his moral compass. For more information, please see the discussion above under Sentencing Factor #1, the letters attached hereto).

If the Guidelines simply do not capture the circumstances of a case which the district court determines are relevant to a proper sentence or if the circumstances are sufficiently unusual, the district court may, in its discretion, factor those circumstances into its sentencing decision. Such occasional departures do not defeat the purpose of the Guidelines, which is to "carve out a 'heartland,' or `set of typical cases', against which each individual case must be measured". USSG §1A(2) and § lA(4)(b) (1987 Version); *Koon v . United States*, 16 S.Ct. 2035, 2054 (1996); See also *United States v. Cook*, 938 F.2d 149, 153 (9th C ir. l991) ("There is no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating

circumstance'."); *United States v. Connor*, 796 F.Supp 366 (C.D. Ill. 1992)( departing upwards not on any single factor, but on a combination of factors); *United States v. Rivera*, 994 F.2d 942 (1st Cir. 1993) (including a lengthy discussion of the rule of departures in sentencing decisions, which has been proposed as an amendment to the guidelines).

Taken together, the fact that his crime was wholly motivated by his inability to find work, his involvement with "friends" who led him down the wrong path, as well as the fact that his criminal history category over-represents both the true seriousness of his past criminal conduct and also seriously over-represents the likelihood that Mr. Jackson will commit other crimes after his release from federal prison, provide a combined reason for this Honorable Court to downward depart. The reality is that even with a departure, Mr. Jackson will still spend a significant amount of time in prison, i.e., nearly seven (7) years. A statutory sentence less than the Guidelines range of 219 to 252 months would not make Mr. Jackson' crime any less serious, nor would it reward him unjustly for anything he has done. Rather, it would acknowledge his unique characteristics and circumstances, not the inherent flaws of certain procedures, and place him in a more accurate sentencing range in the end.

## ENHANCEMENTS UNDER SENTENCING GUIDELINES

As noted in the Objections To Presentence Investigation Report filed this date, Mr. Jackson should not be assessed Six (6) points for the "otherwise use of a firearm " in either Count XII or in Count XIV  nor the Two (2) offense level points for the occurrence of the physically restrained witness during the robberies.

### A. There was no Physically Restrained Witness

§1.1(K) defines "physically restrained" as follows:

§1B1.1. Application Instructions

    Application Notes:

      1. The following are definitions of terms that are used frequently in the guidelines and are of general applicability (except to the extent expressly modified in respect to a particular guideline or policy statement):

        (K) "Physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up.

In a robbery prosecution, in order for the enhancement to apply, the court must first find that the following sentencing guideline has been proven by the Government or admitted by the defendant:

    §2B3.1. Robbery
        (a) Base Offense Level: 20
        (b) Specific Offense Characteristics
            (4) . . . (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.

    In the matter involving Mr. Jackson, there was no "Physical Restraint" as that term is defined in § 1B1.1(K) because the witness in either of the robberies was not tied up, bound nor locked up. There was no effort taken to prevent the witnesses from leaving the room nor were there any verbal threats made to prevent the witnesses from leaving. In *United States v. Doubet*, 969 F.2d 341 (7th Cir. 1992), the Seventh Circuit rejected the "physically restrained" enhancement whenever victims of a robbery were moved from one room to another room **UNLESS** the victims were confined into one small room and also prevented by the defendants from leaving that small room, such as by threats of death or the presence of an explosive barring their departure. The Seventh Circuit explained as follows:

> This is not to say that herding victims into a defined area necessarily constitutes "physical restraint." Although the government seemed to urge such an expansive interpretation at argument, such an approach, in our view, lacks a limiting principle. Doubet argues as much, contending that sequestering the tellers in the bathroom can be equated with simply directing them to one side of the room and admonishing them not to move. Indeed, we agree that such action, in itself, would

likely not suffice to justify enhancement. Were it otherwise, enhancement would be warranted virtually every time an armed robber entered a bank, for a threat not to move is implicit in the very nature of armed robbery.

*United States v. Doubet*, 969 F.2d at 346.

In another case, several members of an organized crime "street crew" were charged with the racketeering, including the torture and murder of independent bookmaker Hal Smith. At sentencing, the Government argued for a two (2) point enhancement alleging that the victim was physically restrained during the torture and murder as shown by the abrasions on the victim's hands. The Government argued that the victim has been tied down during the torture and murder. The United States District Court for the Northern District of Illinois rejected the application of the "physically restrained" enhancement and there must be specific proof presented by the Government to justify the imposition of said enhancement and said as follows:

> However, the government has not provided and this court is unaware of any evidence which sufficiently demonstrates that Smith was restrained. While Jahoda testified that he left Smith at his house with Infelise, Bellavia, and Marino, and he saw Smith slumped on the kitchen floor, Jahoda did not see nor testify about what happened to Smith after Jahoda left the house. And, while the medical examiner who examined Smith's body noted various abrasions on Smith's hands, he did not identify how those abrasions occurred in his report nor suggest that Smith was restrained.

*United States v. Infelise*, 835 F.Supp. 1466, 1491 (N.D.Ill. 1993)

The facts before this Court do not justify the imposition of the §2B3.1(b)(4)(B).

### B. **Mr. Jackson did not "otherwise use" a firearm**.

If a defendant otherwise uses a firearm during a robbery, then the Court is justified in imposing a Six (6) point offense level enhancement under § 2B3.1(b)(2)(B) which provides as follows:

  §2B3.1. Robbery
  (a) Base Offense Level: 20
  (b) Specific Offense Characteristics
    (2) . . . (B) if a firearm was otherwise used, increase by 6 levels;

§1B1.1(l) defines "otherwise used" as follows:
  §1B1.1. Application Instructions
  Application Notes:

  1. The following are definitions of terms that are used frequently in the guidelines and are of general applicability (except to the extent expressly modified in respect to a particular guideline or policy statement):

    (I) "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

As the Seventh Circuit has noted, the Sentencing Guidelines does not further define the term "otherwise use" nor does it specifically distinguish that term from the other term "brandishing":

> Although the Seventh Circuit has not held specifically what "otherwise using" a firearm constitutes as a sentencing enhancement under § 2B3.1(b)(2), we consider the reasoning in *Johnson* that defines "otherwise using" a firearm persuasive because as in *Johnson*, Robert Seavoy's pointing of a firearm, combined with an explicit threat, amounted to conduct that was more than "brandishing, displaying, or possessing a firearm or other dangerous weapon" under Sentencing Guideline § 1B1.1 .

*United States v. Seavoy,* 995 F.2d 1414, 1422 (7th Cir. 1993). In this *Seavoy* case, the defendant pointed his firearm at the bank personnel and patrons and threatened to kill the bank employees or customers if they got off the floor. Unlike Mr. Jackson wherein no verbal threats of death or injury were made. Although a verbal threat is not a necessary part of the proof needed for this enhancement, *United States v. Taylor*, 135 F.3d 478, 482 (7th Cir. 1998), there must be some additional threatening behavior more than just pointing a gun n the direction of persons present at the scene.  Examples of such additional actions include (1) making physical contact with a

witness by placing the firearm against the witness' back [*United States v. Taylor*, 135 F.3d 478, 483 (7th Cir. 1998)], (2) pointing it a witness' head even without physical contact [*Id.*], or (3) taking a firearm from a security guard coupled with threats to kill customers or employees if they raise their heads off the floor [*United States v. Wallace,* 212 F.3d 1000, 1003-4 (7th Cir. 2000)].

Since in Mr. Jackson's case. There was no physical contact with the weapon, no witness was signaled out for adverse treatment either verbally or physically and there were no threats made, this enhancement should not be imposed against Mr. Jackson.

**WHEREFORE**, Michael Jackson respectfully requests that this Honorable Court, after conducting the two-step analysis and after weighing the sentencing factors, impose a statutory sentence of incarceration in the United States Bureau of Prisons for a term of a total of Seven (7) years on Count XIII followed by a period of Probation of Five (5) years on Counts XII and XIV with the following conditions and findings:

A) that Mr. Jackson participate in a drug evaluation and in any reasonable and appropriate treatment program;

B) that this Honorable Court recommend to the United States Bureau of Prisons ("BOP") that Mr. Jackson be housed at the Oxford, Wisconsin BOP facility in the lowest possible security setting with appropriate drug and alcohol and mental health evaluation and treatment programs;

C) that all interest on any unpaid amounts of fine or restitution be waived;

D) that this Honorable Court grant Mr. Jackson credit for all days held in the custody of the United States Marshal's Service since he was indicted by the United States Grand Jury in November of 2007;

E) that any prison sentence imposed for offense charged in Count XII be concurrent to any prison sentence imposed for the offense as charged in Count XIV; and

F) any other reasonable condition(s) as this Honorable Court deems appropriate.

Dated this 27th day of August, 2008, at Freeport, IL.

        Respectfully submitted;

        Michael Jackson, Defendant

    By: /s/ Michael J. Phillips
        Michael J. Phillips
        Attorney for Michael Jackson
        10 North Galena Avenue, Suite 210
        Freeport, IL 61032-4360
        (815) 378-1479

## PROOF OF SERVICE

The undersigned certifies that he served a true, correct and complete copy of the above and foregoing "Defendant Michael Jackson's Sentencing Memorandum" on the following interested individuals:

    Mr. Michael Iasparro
    Assistant United States Attorney
    308 West State Street, Suite 300
    Rockford, IL 61101

Service was accomplished on Wednesday, August 27, 2008, pursuant to the Northern District of Illinois Electronic Case Filing System (ECF) as to all counsel who are Filing Users with respect to this matter.

        /s/ Michael J. Phillips
        Michael J. Phillips